## Missouri & Illinois Bridge & Belt Railroad Company v. Illinois Terminal Railroad Company.

1. NOTICE TO TERMINATE—*what not.* Held, that a letter referred to in the opinion, did not possess the requisites necessary to constitute a formal notice to terminate the contract in question in the case.

2. CONTRACT—*with regard to use of railroad tracks construed.* The contract in question in this case, pertaining to the joint use of railroad tracks is construed and the rights of the parties with respect thereto defined.

Bill in chancery. Appeal from the Circuit Court of Madison County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1906. Reversed and remanded. Opinion filed March 15, 1907.

JOHN F. McGINNIS, for appellant; C. N. TRAVOUS, of counsel.

WARNOCK, WILLIAMSON & BURROUGHS and HENRY S. BAKER, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a bill in chancery filed by appellee against appellant, to enjoin the latter from using certain railroad tracks and also to regulate its use of certain other tracks and an interlocking plant, all located on Front street along the river front in the city of Alton, Illinois.

The facts involved in the controversy, as disclosed by the record, appear to be substantially as follows:   Appellee is a

railroad company, incorporated under the laws of this State, owning and operating a railroad from Alton to Edwardsville, Illinois. It also has terminals, sidings and switches in the yards of the Illinois Glass Company, at Alton, and along Front street, which follows the Mississippi river, in said city. By an ordinance of said city approved July 10, 1895, appellee was authorized, empowered and licensed to lay, construct and maintain a railroad track from a point at or near the west line of Henry street, thence easterly along Front street, to the easterly limits of the city of Alton, said tracks along Front street to be on a line of route, south of the tracks of the Chicago & Alton Railroad Co., as then laid in said street; and also to construct the track or tracks of other railroad companies on said Front street, etc. Appellant is successor to the St. Clair, Madison & St. Louis Belt Railroad Company, and owns and operates what is known as the Alton Bridge property.

By an ordinance approved January 16, 1896, the St. Clair, Madison & St. Louis Belt Railroad Company, its successors and assigns, were authorized, empowered and licensed to build, maintain and operate a railroad track on the river front, beginning at a point near the foot of Henry street, and connecting there with the tracks of said company as then laid, thence extending westward on to the lot of land lying between the tracks as then laid, of the Chicago & Alton Railroad Company and the St. Louis, Chicago & St. Paul Railroad Company, to a point on or near the west line of Market street and to connect near said latter point with tracks in that vicinity; together with connections with the rails of its own and other roads at such points as said Belt Railroad Company might deem necessary and fit. These tracks were all located along Front street and the track authorized by the ordinance was constructed along said street. Henry street crosses Front street at right angles at a point east of the Illinois end of the Alton bridge, and some distance west of Henry street; Front street is also crossed at right angles by Market street. Appellant's tracks on the Illinois side of the bridge form a Y, the east leg of which

crosses the tracks of the Chicago, Peoria & St. Louis Railroad and the Chicago & Alton Railroad at points between the west line of Henry street and an interlocking switch tower located about 300 feet west of the west line of said street.

On November 17, 1897, J. F. Barnard, as receiver of the St. Clair, Madison & St. Louis Belt Railroad Company, entered into a written contract with appellee, giving it permission and license to connect its tracks with the tracks of the St. Clair, Madison & St. Louis Belt Railroad Company, at or near the foot of Henry street in the city of Alton, upon the following conditions and terms, which were accepted by appellee:

"1. That all switches herein provided for shall be connected with the interlocking tower house of the St. Clair, Madison & St. Louis Belt R. R. Co. in a manner satisfactory to the receiver thereof or his successors, and to the Illinois Railroad & Warehouse Commission.

"2. That the kind and quality of all material for said connections shall be approved of by, and the work shall be constructed and the switches maintained and operated in a manner satisfactory to, the receiver of the St. Clair, Madison & St. Louis Belt R. R. Co. or its successors or assigns, and to the Illinois Railroad & Warehouse Commission.

"3. That said connection shall consist of an interlocking cross-over from the tracks of the St. Louis, Chicago & St. Paul Railway Company, at or near the foot of Henry street, in Alton, Illinois, to a point on the rails of the said Illinois Terminal Railroad Company. And also of a connection made through an extension of the rails of the Illinois Terminal Railroad as now laid westward to a point on the rails of the St. Clair, Madison & St. Louis Belt R. R.

"4. That the entire cost of such connections, switches, crossings and interlocking, including all material and labor of erecting same, shall be paid for by the Illinois Terminal Railroad Company.

"5. That said Illinois Terminal Railroad Company shall pay the entire cost of such maintenance, repairs, renewals and improvements, and of the interlocking device necessary

to operate them, that said receiver, his successors or assigns, shall deem necessary and shall make from time to time.

"6. The foregoing grant of the receiver of the St. Clair, Madison & St. Louis Belt Railroad is expressly conditioned upon the performance by the Illinois Terminal Railroad Company, of the stipulations and conditions above set forth, to be by it kept and performed and a default in or a failure to perform any of said covenants or conditions shall work an absolute forfeiture of this grant of said receiver, or of any portion of it, at the option of said receiver, or of his successors or assigns.

"This permission and authority, or any portion of it, is revocable at the pleasure of the receiver, or his successors, upon ten (10) days notice in writing being given to the Illinois Terminal Railroad Company of such revocation."

At that time appellee did not operate any trains but had a system of switches and employed the Chicago & Alton Railroad Company to do switching for it.

On May 16, 1900, the St. Clair, Madison & St. Louis Belt R. R. Co., as party of the first part, and appellee, as party of the second part, entered into another contract, reciting that whereas said St. Clair, Madison & St. Louis Belt R. R. Co. owned a railroad track situated on land in Alton, Illinois, lying between Front street and the levee and between the main track of the Chicago & Alton Railroad Company and the main track of the Chicago, Peoria & St. Louis R. R. Co. and between the extended lines of Henry street and Market street, with a siding known as the storage and repair track, which track and siding were said to be more fully indicated in location and extent by a map attached to and made a part of the contract; and whereas, it was proposed to construct an extension of said main track from the upper end thereof towards and near to Plasa street, and also to extend the siding known as the storage and repair track, and to build an additional siding, therefore in consideration of the benefit and advantage to result to the parties to the contract, it was mutually covenanted and agreed:

"First. That the party of the second part shall build the proposed extension of the main track and siding at its own expense and when done the same shall be the property of the party of the second part, and all the above described tracks are to be used jointly by the parties hereto, except that the storage and repair track shall be for the exclusive use of the first party.

"Second. The party of the first part will keep in repair the side track to be built by the second party, and the track which is to be used as the storage and repair track by the party of the first part, and the party of the second part will keep in repair the remainder of the tracks, both now existing as above described and as hereinafter to be built or extended.

"Third. It is further mutually understood and agreed that if either party hereto shall hereafter construct any other track or tracks within the limits above described, or, if the party of the second part shall make any connection between the said track as extended and the levee tracks of the city of Alton, such new track or tracks or connections shall be for the joint use of the parties hereto, and may be used jointly by the said parties.    *    *    *

"Sixth. It is further contracted and agreed between the parties hereto that the party of the first part shall bear all the expense of the operation and maintenance of the interlocking plant owned by the party of the first part now installed as indicated on the plat made a part thereof; provided however, that the second party shall bear all expense of constructing the connection with such plant of the proposed additional switch west of and near to the signal tower."

In compliance with the first contract, appellee's track was extended by it from its terminus near the west line of Henry street, west about 315 feet, to a point south of the interlocking switch tower, orally agreed upon and marked by a railroad iron sunk in the ground, where it connected with appellant's track. Appellant's track had extended a considerable distance further east from the point last named, connecting with the east leg of the Y, but appellee tore up the old track to said point and replaced it with a new one.

It also put in a frog and an interlocking device near the switching tower, as provided for by the agreement.

Both parties appear to have used the tracks mentioned in the two contracts jointly, without serious trouble, until June 5, 1905, when appellee's general manager wrote to Mr. Graham, superintendent of the St. Clair, Madison & St. Louis Belt Railroad Company, as follows:

"For the past two or three years it has been customary for your company in getting trains on the east leg of your 'weye' to back your trains down our main track and proceed up the east leg of the 'weye' through the connection of this company across the Bluff Line. In view of the fact that the Alton Bridge is now owned by a new company, and as all matters will have to be adjusted, if you desire to continue the use of our main track and the cross-over in question, it will be necessary for you to enter into a contract with this company in order to do so. I wish you would take this matter up at once and advise."

On June 21 following Mr. Graham replied to appellee's general manager, Mr. Ferguson, as follows:

"Referring to your favor of June 5th, I hardly understand what you are getting at, in view of the fact that when the contract was entered into, allowing the Illinois Terminal to put in a cross-over connecting with the east 'weye' of the Alton Bridge, it was mutually agreed between yourself and the superintendent of this company that the Bridge Company was to have the use of the line east of Henry street, so as to reach the Bridge with these trains. So, under the circumstances, I can not understand that it is necessary to enter into any new contract, as you suggest."

On the following day Mr. Ferguson again wrote to Mr. Graham:

"Replying to your favor of the 21st in reference to the use of our main track by your company, there was never any agreement entered into between the superintendent of your company and ourselves which permitted the Bridge Company to use the main line of this company east of Henry street.

While it is true we have allowed your company the use of our main line east of Henry street, as a matter of help out, still there was never any agreement which gave your company this permission, and, in view of the fact that your company is now operated by a new company, if you still desire to continue the use of our main track east of Henry street, including cross-over, etc., it will be necessary for your company to enter into an agreement for the use of this track, for which this company will expect a compensation. I would like to have an answer on this at once, so there will be no unnecessary delay."

Apparently in answer to this letter, the following reply was sent by Mr. Graham, on July 7, 1905:

"Answering your favor of July 6th, I have to take issue with you in saying that you never entered into any agreement by which the Bridge Company was to have the use of the track east of Henry street, so that it could move its trains via the east leg of the 'weye.' My predecessor informs me, that such an oral agreement was entered into with you, and the very fact that this arrangement has been in effect for almost eight years, proves the truth of this statement. If you insist on our not using the cross-over in question, without the new company entering into an agreement by which you expect some compensation, that we will never do, and as long as the cross-over remains in, we will use it, and if you should try to prohibit us the use of it, you can make arrangements to have it removed, as that was a right reserved by us in the contract, as originally drawn up, and acquiesced in, by the President of your company."

It was and is contended by appellee, that the above letter of July 7, 1905, amounted to a written notice of a revocation of the contract of 1897, as provided for therein, and soon afterwards appellee disconnected the track of appellant leading to the tracks which connected with the Chicago & Alton Railroad and the Cleveland, Cincinnati, Chicago & St. Louis Railroad and placed therein a frog, in order that appellee's track could connect with said tracks.

On July 14, 1905, appellee filed its bill for injunction, claiming the 315 feet of track extending from the west line

of Henry street to a point opposite the switch tower, as part of its main line or track and its sole property, and that said bridge company never had any right or authority to make use of said connection or to use the track of appellee in any way, and that the use of said connection and said main track by said bridge company was wholly without the sanction or consent of appellee. Said bill asked that the court restrain and enjoin appellant from using any of the tracks or railroad property of appellee, located east of the interlocking plant on Front street, for any use whatsoever, except for the purpose of delivering cars to appellee, and also from interfering in any way with the connection of the main line of appellee with the joint track located on Front street and from so using and operating said interlocking plant, as to delay trains of appellee, or prevent the safe and proper use of said joint track by appellee; and also from obstructing the main joint track in any manner that would interfere with the prompt operation of appellee's trains.

A temporary injunction was granted and on the same day appellee tore up all connections of appellant near the tower house with the Chicago & Alton Railroad, and the Cleveland, Cincinnati, Chicago & St. Louis Railroad and practically destroyed appellant's connection between the east and west branches or legs of its Y.

Appellant answered, admitting that in making up its trains of cars on its storage track, it did back its trains eastwardly onto the main track of appellee and then pulled the same up over the east leg of the Y and also admitted that it did not have authority to do so by reason of the contracts above mentioned. It alleged however that it used said main track in accordance with an oral agreement entered into between the parties some eight years prior thereto, whereby it was agreed that in consideration of appellant permitting appellee to run its trains and cars in and upon the Alton bridge and turn around thereon, and to go up on the west leg of the said bridge, appellee was to permit appellant to use its main track for switching cars and that appellant had always during the said eight years used said track in a

careful manner, so as not in any way to interfere with the business of appellee.

The answer denied that any of the connections with the tracks of appellant were the property of appellee and also denied that it intended to disconnect the main track or line of appellee from what is called the joint track, or to use said interlocking device in any manner, which could injure appellee. It further denied that appellee was entitled to the injunction prayed for or to any relief whatsoever.

Upon the trial the evidence was heard in open court and a decree rendered in favor of appellee, finding that the equities of the cause were with appellee and that the 315 feet of track, extending from near the west line of Henry street to a point south of the interlocking tower, indicated by a piece of railroad iron sunk into the ground at that point, formed an integral part of the main line or track of appellee; that said main line or track of appellee consisted of but a single track and was connected with the joint tracks of appellant and appellee, located west of said interlocking tower; that by reason of the fact that appellee operates its switch engines for the use and benefit of itself and other railroads in the city of Alton, it is necessary that said 315 feet of main track be kept clear and free of all other locomotives, engines and trains; that appellee required the exclusive and entire use of all of its main track for its own objects and purposes; that appellant was using said main track of appellee many times a day and in so doing interfered with and prevented the use of said track by appellee and greatly endangered the trains of appellee operating over the same and seriously crippled its business, hindered it from performing its duties as a common carrier and made it dangerous to passengers and train crews; that the use of said main track was not authorized by any contract or agreement; that the contract of November 17, 1897, was terminated by defendant by its letter of July 7, 1905; that by neither said contract nor the contract of May 16, 1900, or by any other contract or agreement between the parties, was any right or authority given appellant to use the main track of appellee in any manner;

that unless restrained by injunction, appellant will disconnect or attempt to disconnect the main track or line of complainant, with the joint tracks of complainant and defendant, as described in the contract of May 16, 1900, and will also attempt to make an improper use of the interlocking plant so as to prevent the use of the joint tracks and thereby irreparably injure appellee. It was therefore decreed that appellant, its servants, agents, representatives and employees, be forever and perpetually enjoined from using or running any cars or locomotive engines upon any of the main track of appellee and particularly from running them over the main track of appellee located east of the west end or terminus of appellee, at or near said interlocking plant, for any purpose whatever, except for the purpose of delivering cars to appellee. It was also enjoined from interfering in any way with the connection of the main line of appellee, with the joint tracks of appellant and appellee, described in the contract of May 16, 1900, and from using and operating said interlocking plant, so as to unnecessarily delay the trains of appellee, or to prevent the safe and proper use of said joint tracks by appellee, in accordance with the express provisions of the contract of May 16, 1900; and it was further ordered that appellant pay the costs of suit.

To review this decree appellant, the defendant below, has appealed the case to this court.

The first question necessary for us to consider is whether or not the contract of November 17, 1897, was terminated by the letter of July 7, 1905, written by Mr. Graham, superintendent of appellant, to Mr. Ferguson, the general manager of appellee. The contract provided that "this permission and authority or any portion of it is revocable at the pleasure of the receiver, or his successors, upon ten days' notice in writing, being given to the Illinois Terminal Railroad Company, of such revocation." The first part of the letter of July 7 refers to an oral agreement, which appellant claims to have made with appellee, for the use of appellee's track east of Henry street, and concludes, "if you insist on our not using the cross-over in question without the new company

entering into an agreement, by which you expect some compensation, that we will never do, and as long as the cross-over remains in we will use it, and if you should try to prohibit us the use of it, you can make arrangements to have it removed, as that was a right reserved by us in the contract, as originally drawn up and acquiesced in by the president of your company." The contract provided that the connection about to be made, between the tracks of the two companies, should consist (1) of an interlocking cross-over from the tracks of the St. Louis, Chicago & St. Paul Railway Company, at or near the foot of Henry street to a point on the rails of appellee, and (2) a connection made through an extension of the rails of appellee, as then laid, westward to a point on the rails of appellant's predecessor, the St. Clair, Madison & St. Louis Belt R. R. Co. The letter does not appear to us to possess the requisites necessary to constitute it a formal notice to terminate any portion of the contract, as it does not evince an election upon the part of appellant to revoke the same, but only intimates what might be expected if appellee should try to prohibit appellant from the use of the cross-over; but even if the letter could be considered as such a notice, it only referred to the cross-over connection and left the rest of the contract in full force and effect. While, for the reason above given, the decree of the court below cannot be permitted to stand as it is, we deem it proper to consider what the result would have been had the notice been sufficient to terminate the whole contract, as this subject is covered by the decree and is discussed at length in the arguments of counsel.

Appellee contends that in such event it not only had the right to remove the cross-over, but that it thereby became entitled to the exclusive and entire use of the 315 feet of track, extending from the west line of Henry street, west to the point south of the interlocking tower, where the railroad iron was sunk into the ground.

By its original franchise from the city, appellee was authorized to construct and maintain a railroad track, beginning at a point at or near the west line of Henry street,

thence easterly along Front street to the easterly city limits; while appellant's predecessor was given the right to build, maintain and operate a railroad track on the river front, beginning at a point near the foot of Henry street, connecting with tracks of the company as then laid, thence extending westward onto the lot of land lying between the tracks of the Chicago & Alton Railroad Company and the St. Louis, Chicago & St. Paul Railroad Company, to a point on or near the west line of Market street, and to connect near said latter point with tracks in that vicinity.    That is to say, the track of appellee was to extend east from the west line of Henry street, while the track of appellant was to extend west from about the same point.    There was nothing in appellee's ordinance giving it the right to construct any of its main line, west of Henry street, and the only right it appears to have had to occupy said territory, was by virtue of its contract with appellant's predecessor of November 17, 1897. By that contract appellee was given permission and license to connect its track with the tracks of appellant's predecessor, at or near the foot of Henry street, upon certain conditions.    Among them were that the connection to be made should consist of an interlocking cross-over and also of an extension of the rails from the western terminus of appellee as then laid westward, to a point on the rails of appellant's predecessor, and that the entire cost of making these connections, together with switches, crossings and interlocking should be paid for by appellee, who should also pay the cost of maintaining the same.    Appellee constructed the road to the point agreed upon south of the interlocking tower, taking up the rails previously laid by appellant, and also constructed the cross-over and maintained them under the contract, until the new contract of May 16, 1900, was entered into, which provided for an extension westward of appellant's main track, and also for the building of an additional siding at the expense of appellee, and that appellant should bear the expense of the operation and maintenance of the interlocking plant.

These contracts plainly show that their object was to per-

mit the joint use and occupancy of the tracks in question, so long as the contracts should be in force. If the contract of 1897 was ended by the letter of appellant, as claimed by appellee, what right had appellee to maintain any track whatsoever west of Henry street? Its only right at all to use that territory, was the "permission and license" given it by appellant's predecessor to maintain tracks, for the joint occupancy of the two roads and when that license and permission was withdrawn, appellee had no right whatever to occupy the territory. Its claims to the ownership of and right to the exclusive and entire use of any of the tracks west of the west line of Henry street, are not sustained by the evidence.

There is evidence in the record tending to show that appellant had been in the habit of using the main line of appellee, east of Henry street, to reach the east track of its Y, and that such use of said track by appellant interfered with and hindered the use of the same by appellee. Appellant claims the right to make use of this track by virtue of the oral agreement above referred to, entered into between certain officers of the two companies, about eight years before the bill was filed, by which it is claimed appellee was permitted to use the Y of appellant, running to and from the bridge, in order to turn its cars, and in return appellant was to have the use of the main track of appellee for switching cars, provided such switching was done in a manner so as not to interfere with any of the trains or business of appellee. Appellant does not appear to have established the fact of this agreement, by a preponderance of the evidence, and consequently it cannot maintain its right to the use of appellee's main track, that is, the track east of the west line of Henry street.

Appellee was therefore entitled to have appellant enjoined from the use of the track east of the west line of Henry street and to that extent the decree was correct.

The decree of the court below is reversed and the cause remanded with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded.*